NEW ORLEANS & N. E. R. Co. *v.* MYERS.*

(Division A. Jan. 4, 1926.)

[106 So. 531.   No. 25198.]

1. CARRIERS.  *Damages from missing conveyance and having to walk home in storm recoverable for negligent carrying beyond station.*

Passenger's damage from missing conveyance, which was waiting for her, and being required to walk home in storm, because of negligent carrying of her beyond and out of sight of her station, is recoverable, though train was backed to station after conveyance had left.

2. CARRIERS.  *Instruction embodying carrier's theory as developed by its witnesses should have been given.*

In action by passenger carried beyond station and missing conveyance, compelling her to walk home in the rain, instruction which embodied theory, as developed by defendant's witnesses,

that the train was always in sight of station, and immediately backed, so that husband waiting for passenger could not have been misled, should have been given.

*Headnotes 1. Carriers, 10 C. J., Section 1266  (Anno); Measure of damages for carrying passenger beyond destination, see notes in 17 L. R. A. (N. S.) 1226; 41 L. R. A. (N. S.) 745; 4 R. C. L. 1087. 2. Carriers, 10 C. J., Section 1292.

Appeal from circuit court of Second District, Jones county.

Hon. R. S. Hall, Judge.

Action by Emeline Myers against the New Orleans & Northeastern Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Bozeman & Cameron,* for appellant.

I.  *Defendant was entitled to a peremptory instruction.* We submit that even leaving out the consideration of whether negligence is required to fix liability or not, plaintiff in this case has failed to show any breach of duty. Certainly this court cannot lay down the absolute rule that a passenger train must run to a station and stop at the exact spot desired on the first trial. After a diligent search of the authorities we have found no case on record where a station was passed and the train backed up promptly, the passenger discharged, and any verdict was awarded in favor of a passenger so treated. We submit that the proper rule in such a situation is that a carrier performs its full duty when, having run by the station, either through its fault or inadvertence, promptly backs the train up to the station and discharges the passenger at the proper place. This principal was declared, at least inferentially, in *Birmingham Ry. Light & Power Co.* v. *Seaburn* (Ala., 1910), 53 So. 241.

II.  *Carrier liable only for negligence.* Certainly the railroad company in this case was not an insurer as far as its obligation to carry Mrs. Myers to her destination

was concerned. Even if she had been transported beyond her destination and ejected some distance from the station, she could not have recovered unless the carrying by was the product of negligence on the part of the rail road company. The plaintiff's case fails because of failure on her part to establish that she was negligently carried by her destination. It stands in the record without question or dispute that the conductor did everything reasonably in his power to discharge her at Tawanta when the train first went by. No train man failed in his duty.

If there was any negligence at all shown, therefore, it must be implied from the failure of the valve at the end of the second class coach to work so as to transmit the signal to the engineer. It is equally clear and undisputed that there was nothing whatever organically wrong with the valve, and it was not shown that it was not a standard valve and in good condition. The only thing the matter with it was that some foreign substance had gotten into the valve, and it was further proved without dispute that the valve worked perfectly a few miles north of Tawanta, being the last time the conductor had occasion to use it.

III. *Damages claimed not recoverable.* The law as to damages recoverable is perfectly well settled and no citation of authorities is necessary. We are sure that all will agree that the general principle is that no damages are recoverable unless they could be presumed to have been reasonably within the contemplation of the parties, or reasonably to have flown from the wrong claimed. These damages are, we submit, remote and not recoverable.

IV. *Erroneous instructions.* We submit that the court below committed a number of highly prejudicial errors in the giving and refusing of instructions. We will take them up in the order they appear in the record.

The first instruction given to the plaintiff contains an error which goes to the very foundation of the case and which will, of itself, we contend, necessitate a reversal of the case. We refer to the instruction in which the jury was advised that, "The law imposes upon the defendant the duty of exercising a high degree of care to transport the plaintiff . . . to her destination, according to its schedule." This, we submit, is not the law. The standard laid down by the authorities calls only for ordinary care, or reasonable diligence. *Southern R. R. Co.* v. *Miller*, 129 Ky. 98, 110 S. W. 351; *Ark., etc., R. R. Co.* v. *Janson*, 90 Ark. 494, 119 S. W. 648.

The action of the court below in refusing the first instruction was also, we submit, clearly erroneous. For convenience we quote this instruction: "The court instructs the jury for the defendant that even though you may believe from a preponderance of the evidence that the train of defendant ran by the station in question, still, if you further believe from the evidence that the train passed the station only a short distance and that it never passed out of view, and that it backed up and discharged plaintiff at the regular stopping place, then the defendant has performed its full duty, and it is your sworn duty to return a verdict for the defendant." This instruction certainly states good law. If this is not good law, railroads are in a bad way. It is frequently very hard to stop a long passenger train at the point intended. Frequently the engineer has to back up or pull forward several times before he gets the cars spotted at their proper location. If the instruction under observation is to be condemned, railroads would not be permitted to do this with impunity.

Certainly no liability could arise if the train for any reason ran by the station a short distance, never got out of sight of the station, immediately backed up and discharged the passenger. This is, from our view, too palpable to require argument.

*Currie & Currie* and *D. M. Watkins*, for appellee.

I.   Counsel for the appellant take the position that the appellant did not violate in the slightest any duty which it owed the appellee and her three small children as passengers.   They take the position that the law required the appellant to exercise only ordinary care in transporting them and to deliver them at their destination at any time within a reasonable length of time.   Neither of these propositions are the law. 4 R. C. L., page 1088, par. 538, defines the legal duty of a carrier of passengers.   It is entirely beyond dispute, and the fact was found by the jury, that the appellant breached its duty within the clear meaning of the foregoing rule, and the only legal effect of backing the train after carrying the appellee and her little children past their station for a mile or a mile and a half and keeping them away from the station until after her husband had gone, would be in mitigation of damages only, and the jury, with all of the facts before it and upon ample testimony to justify it, assessed the damages at five hundred dollars.

II.   *Degree of care required of carrier.*   Counsel for the appellant in their brief state the law to be (without authority) that the carrier discharges its full duty to its passenger if it delivers its passenger within a reasonable length of time.   4 R. C. L., page 1082, par. 532, lays down the law on this subject.

· Counsel for the appellant also lay down the law in their brief to be that the carrier discharges its full duty to its passenger if it exercises only ordinary care to safely transport and deliver its passenger at destination.   In support of their contention they quote a short paragraph from Corpus Juris, a short excerpt from a Kentucky case and cite one case from Alabama.   It will be observed that it cites no cases from our own state, but we refer the court to *Vicksburg & Jackson R. R. Co.* v. *Patton,* 31 Miss. 156; *N. O., Jackson & Great Northern R. R. Co.* v. *Albritton,* 38 Miss. 242; 2 Greenl., Evidence, sec. 221; Angell on Carriers, sec. 569.   The true rule in our own state is reasonable skill and the exercise

of the utmost care. · 4 R. C. L., page 1144, par. 586 and note; *Vicksburg, etc., R. R. Co.* v. *Patton,* 31 Miss. 156, and *N. O., etc., R. R. Co.* v. *Albritton,* 38 Miss. 242.

III. *Carrier of passengers liable for slight negligence.* Personal Injuries on Railroads—White, Vol. 2, page 891, par. 581; *George* v. *St. Louis, etc., R. R. Co.,* 34 Ark. 613, 1 Am. & Eng. R. Cas. 294; *Treadwell* v. *Whittier,* 80 Cal. 574.

IV. *Instructions.* The instruction quoted in the brief of the appellant was properly refused. There was no dispute at all but that the train could be seen for at least one quarter of a mile south of the station at Tewanta, and to carry a lady and three small children a quarter of a mile past the station in the woods in the country at night and in the rain and thunder and lightning—the appellee testified that it was thundering and lightning—and delay her for such length of time as that her husband who had come to the station to bring a conveyance for her had given up hopes of her coming on the train and had left before she was delivered at the station, would be a violation of the duty of the railroad company, which would render it liable to suit. Moreover, under the set-tled and strict rule of law, it is negligence which renders a carrier liable to action to carry a passenger by his destination at all without stopping the train at the station and affording the passenger a reasonable opportunity to get off. According to the engineer's own testimony, the train was running fifteen miles an hour when it passed the station.

Moreover, if said instruction as requested be the law, then a carrier might with impunity run its train by the destination of a passenger at a station without stopping, on its road where its train would be visible for five or ten miles; and under the instruction, if correct, if the train should stop in such a case just before it went completely out of sight and back back to the station, no matter what the other circumstances might be, it would not be a breach

of the duty of the carrier and it would not be liable in damages, regardless of the evil consequences to the passenger.

Cook, J., delivered the opinion of the court.

The appellee instituted suit against the New Orleans & Northeastern Railroad Company for damages alleged to have been suffered by her on account of the failure of the railroad company to reasonably transport her to the station to which she had bought a ticket, and from a judgment in favor of appellee for five hundred dollars this appeal was prosecuted.

The facts as developed by the appellee's testimony are substantially as follows:

The appellee resided about a mile and one-half from Tawanta, a flag station about five miles south of Ellisville, Miss. On the night in question she boarded appellant's train at Ellisville, in company with her three young children and another woman with one child, holding a ticket to Tawanta, where the train was scheduled to arrive about nine o'clock at night. This train was not scheduled to stop at Tawanta except when there were passengers aboard to be discharged or when some one flagged the train. The appellee testified that when the conductor took up her ticket, she notified him that her husband would meet her at Tawanta with a conveyance; that the train did not stop at Tawanta, but when near Fox's Mill, between a mile and a mile and a half south of Tawanta, the conductor asked her if she was going to Fox's Mill; that she informed him that she desired to get off at Tawanta, and thereupon he stopped the train and backed up to the station at Tawanta, where she alighted on the station platform; that her husband was not at the station when she got off the train; that it was dark and raining, and there was no one at the station except a negro, and as a consequence she was compelled to walk to her home through the mud and rain, carrying two of her children, who were too small to walk under the conditions

then existing, and that she was made sick by the exposure and exertion of this trip.

The husband of appellee and other members of her family testified that it was raining on the night in question, and that they went in a wagon to this flag station to meet the appellee, arriving there about ten minutes before the train was due; that when the train arrived it did not stop or slow up; that they watched it until it went out of sight around a curve about a quarter of a mile away, and, concluding that the appellee had failed to board the train at Ellsville, they then drove home; that the appellee arrived at home after ten o'clock; and that she was wet, muddy, and almost exhausted from the walk, and as a result was sick for some time thereafter.

The testimony for the appellant was in sharp conflict with that of the appellee as to the distance the train ran after passing the depot at Tawanta, as to the condition of the weather, as to whether the appellee was actually met by some one when the train backed up and discharged her at the station, and as to whether the conductor was advised by appellee that she would be met at the station by her husband, and there was testimony for the appellant which, if it had been accepted by the jury, would have exonerated it of the charge of negligence in failing to stop at the depot, but, since the jury resolved all the disputed facts in favor of the appellee, we deem it unnecessary to set out this testimony in detail.

The appellant contends that the peremptory instruction requested by it should have been granted, for the reason, among others, that the failure to stop the train was not due to negligence. Accepting the appellee's testimony, as the jury has done, that the train ran more than a mile beyond the station without slowing down, and then for the first time the conductor approached her and inquired whether she desired to get off at the next station, it is manifest that the failure to stop at her station was not due to the fortuitous circumstance that the signal to the engineer to stop failed to work at the first at-

tempt, and as a result it became necessary to give the signal from another coach, as testified by the trainmen. There was ample testimony to support the finding of the jury that the failure to stop the train at the station was the result of negligence of the trainmen, and we think that the contention of the appellant that no breach of duty was shown, and that the damages claimed are not recoverable, is fully answered by the case of *L. N. O. & T. R. R. Co.* v. *Mask,* 64 Miss. 739, 2 So. 360, a case which, in its essential facts, is practically identical with those of the case at bar. From the statement of facts in the *Mask case, supra,* it appears that, when the train approached the station, the whistle was sounded and the train began to slow up. Mask and one Haynes, who were then the only passengers on the train, took their baggage, and went upon the rear platform of the car. The conductor having looked into the car, and failing to see the two passengers, signaled the train to go ahead, and it did so. Mask, having failed to get off, approached the conductor, and informed him that he was being carried beyond his station, and asked that the train be stopped. The conductor immediately signaled the train to stop, which was done, the train being then several hundred yards beyond the depot. Mask got off the train, and went back to the depot, and, finding no conveyance there, had to walk home, a distance of three quarters of a mile. This was about twelve o'clock at night, the roadway was muddy, and Mask, who was an old and feeble man, was very much exhausted when he reached home. He went immediately to bed, and there remained for some days, and, still continuing enfeebled, he died some months thereafter. "It was further shown that a servant and horse were in waiting for Mask at the station, but that, the train having passed, and no one having gotten off, the servant returned home, supposing that Mask had not come." There was testimony of physicians that the sickness of Mask was probably induced by his exposure and being compelled to walk from the railroad station

to his home. Upon these facts the only breach of duty considered by the court was the alleged failure to stop at the station. As to whether the train actually stopped at the station, the evidence was conflicting, and it was held that the questions of liability, and as to whether the injury complained of resulted from the failure of the company to stop its train and what actual damages were proven were properly submitted to the jury.

The only difference in the facts involved in the Mask case and the case at bar is that Mask was not carried back to the station on the train, but this does not distinguish the two cases in principle, as there was no injury suffered or damage claimed on account of the walk back to the station, but the recovery was based solely upon the injury and damage alleged to have been suffered on account of missing the conveyance and the consequent walk from the station to the plaintiff's home, the exact condition that existed in the case at bar.

There are several assignments of error based upon instructions granted the appellee, and upon the modification and refusal of instructions requested by the appellant, but we do not think any of them are of sufficient merit to call for discussion except the assignment based upon the refusal of the following instruction:

"The court instructs the jury for the defendant that, even though you may believe from a preponderance of the evidence that the train of defendant ran by the station in question, still, if you further believe from the evidence that the train passed by the station only a short distance, and that it never passed out of view and that it backed up and discharged plaintiff at the regular stopping place, then the defendant has performed its full duty, and it is your sworn duty to return a verdict for the defendant."

This instruction undertook to embody the theory of the defendant as developed by several witnesses. These witnesses testified that the train was lighted, and that it stopped not more than three hundred feet beyond the sta-

tion, at a point in plain view of the station and any one at the station; that it was immediately backed up to the station platform, where the appellee was safely discharged; and that she was met by a white man, who took a child from her arms as she was alighting from the train.  If this testimony was true, the appellee's husband, who testified that he was at the station and watched the lighted train as it proceeded beyond the depot, could not have been reasonably misled thereby, and there was no actionable breach of duty.  The conflicts in the evidence were for the jury to pass upon, but we think the appellant was entitled to have the theory developed by its witnesses submitted to the jury, and consequently for the refusal of this instruction the cause must be reversed and remanded.

*Reversed and remanded.*